Thank you. You may be seated. Our next case is case number 450686. The people of the state of Illinois v. Leon Jones. For the appellant, we have Mr. Wilson. And for the appellee, we have Ms. Brooks. Are you ready to proceed, counsel? Please do. Thank you. May it please the court. Counsel. Good afternoon, your honors. I represent Leon Jones on behalf of the Office of the State Appellate Defender. I plan on briefly touching on issues 1, 2, and 3 during the argument today. The state charged Leon Jones with resisting Officer Ryan Gross. The state submitted an issues instruction to the jury, requiring the jury to find that Leon resisted Officer Ryan Gross. But there was no evidence presented at trial that Leon knowingly resisted or obstructed the performance by Ryan Gross of an authorized act within his official capacity. There was testimony admitted at trial that Leon may have resisted Officer Zimmerman or Officer Wolt, two of the other officers. Were they trying to assist in him being handcuffed by, and the name escapes me. Officer Gross, the third officer. They were putting Leon against the furniture piece of a bar when he refused to leave the physical location of the bar. They may have been trying to assist Officer Gross in getting the defendant under control. I'm not sure. So if they were, would that have been enough? It wouldn't have been, because the state didn't charge it that way. Part of the purpose of charging a criminal offense is to give the defendant some notice of what it is that he's been charged with, what he's going to have to defend at trial. They didn't charge the defendant with resisting Officers Zimmerman and Wolt. Arguably they could have done that. If there was an act that would have allowed the state to say independently of the other acts that he resisted Officers Zimmerman and Wolt, they could have charged Leon with those acts. If I'm Gross, and I say it's time to leave the bar, and I grab your arm, maybe at that point preparing handcuffs or attempting to move you, and you pull away from me, I'm authorized to restrain you, even if you're not yet. I'm authorized to have control of you at the time that I'm prepared to make you leave the bar. Wasn't that, in and of itself, and then Gross apparently steps back, as I'm understanding the testimony, and then becomes part of the event by trying to place handcuffs on him, and there's resistance to that. Sure. I guess where I would say that doesn't amount to resisting arrest is you don't have anything on the part of Gross that says that that somehow inhibited his authorized act. You don't have him saying, I had my handcuffs ready, and you pulled away from me, and as a result of that I wasn't able to handcuff him. I wasn't able to take him into custody. Something along those lines. But the other issue we have here is we have the videotape. And I've probably viewed the videotape, if I've viewed it once, I've viewed it 20 or 30 times. It's difficult to discern what happens in that videotape. It is in black and white. The figures are kind of gray and moving. It's recorded at night in a very busy bar. But one thing that I don't know that anyone can dispute is that from the point that the officers had their initial contact with Leon in the bar to the point that he is handcuffed and removed from view of that camera, approximately a minute transpires. As I've explained in the briefs, there are cases that discuss whether or not a defendant's, if a defendant initially resists an act, but then allows himself to be taken into custody or allows that act to be performed by the police officers, that isn't sufficient to establish resisting arrest. One of the cases I cited was the People v. Flanagan case, where an officer pulled a defendant over, I believe under suspicion of DUI, and told the defendant to get out of the car. The defendant refused to get out of the car. The officer attempted to grab the keys to shut the car off. The defendant took the keys and wouldn't give the keys to the officer. The officer went back to his car, radioed, and then came back to the car. The defendant still didn't get out of the car. Eventually, the defendant got out of the car and was arrested, and he was charged with resisting arrest. One of the things the court found was that, yes, he may have in some ways inhibited the officer's performance of an act, but it was momentary, and it wasn't anything that prevented the officer from exercising his authority in that case. Here you have, again, approximately a minute. It may be a little over, it may be a little under a minute. And in that time, the officer's approaching Leon, secure him against the bar, hat down his pockets, put him in handcuffs, and lead him out of view of the camera. This isn't, in the sense of resisting arrest, a situation where you have a wrestling match or an extended fight where he's not putting his arms behind his back. At some point, very quickly, based on this video, he does that, and he allows himself to be escorted from the bar. So I say that merely to say that if this court were to find that there was an act where he obstructed the performance of Officer Gross, you have a secondary consideration, and that is whether that act actually inhibited Officer Gross from doing something. And I would argue that where, again, and maybe the State will contest this, but I think it's fairly undisputed that about a minute passes, that really isn't resisting arrest here. He gives himself up to the police officers very quickly. But as I said, one of the important pieces of evidence in this case is the videotape. And at least based on my review of that videotape, it is somewhat difficult to discern what's going on in that tape. Again, it's recorded at night, it's in black and white, the image is grainy. I had to watch it several times. Well, Counsel, regarding the videotape, are you suggesting that the videotape portrays your client simply just standing still and putting his hands behind his back for the officers? I'm saying that I don't see any active resistance taking place in the video. Do you see the officers converging on him and appearing to take hold of his body and place his hands and place him against the bar? I do. I do see that. I don't see Leon, though, fighting with the officers. I don't see him struggling with the officers. It is more to me a situation where you have someone in a very busy bar with dozens and dozens of people standing nearby who has told the bar security member that he is not leaving the bar. And you have some officers that want to make sure that that situation is contained and that he is removed as quickly as possible. And I do see them converge on him. I see them pushing him to the bar. The defendant suffers a cut to his chin. But I don't see any active resistance on the part of Leon when the officer, really at any point. It was imperative that the jury be given a full opportunity to view this video and deliberate in a way that their deliberations were private. If there is any kind of fundamental tenet of criminal jurisprudence, it's that a jury should be allowed to deliberate in private. It's been that way for decades. And they weren't fully allowed to do that here. They watched the video once in court and sent out a note during their deliberations asking to see the video again. Now, obviously, it was important enough to the court that the court believed that the video should be shown to the jury again. My problem is the manner with which that video was shown. The judge, instead of taking the video equipment and moving it to the deliberation room, which we know was something that could have been done because at one point the equipment was up in the state's attorney's office and the state's attorney volunteered to bring the equipment to the courtroom so the video could be played for the jury. So we know that it was mobile. There wasn't any reason that that equipment also couldn't be taken to the deliberation room. But instead of allowing the jury to view that video as many times as they wanted in the privacy of the deliberation room where they could rewind it and they could deliberate over it and they could discuss what was taking place on that video, the judge had the jury come back into the courtroom with the judge, the state's attorney, defense counsel, the defendant, and court personnel present and played that video for the jury there. There is nothing in this record to indicate that the jury was told that they could watch the video in the deliberation room. They weren't allowed to do that. There was nothing in this record to show that they were told that they could see the video as often as they wanted. What is in the record is the court statement of the parties that the jury would be brought in and that no one would say a word to the jury. Well, in my experience, only nine years in the trial court, I never had a video displayed in the jury room. Ever. Always in open court. And it should be that way. Because? Because it's a proceeding open to the public. I guess where I would draw a distinction is up to the point that the jury retires to deliberate, that is a proceeding that in my view is open to the public. But once the jury is given that instruction of you can now, you know, prior to deliberations the jury is told you're not to discuss the matter with each other, you're not supposed to consider the evidence until you begin deliberating. And then once they're sent back to begin deliberations, then the whole environment changes. At that point they are adjudicating a very solemn, they're performing a very solemn task. I don't have any dispute with that. My dispute is what's wrong with showing it in open court? Well, two things. One, it takes away from the solemn nature of the jury deliberations where the jury is chilled because if I am a juror, and I think the record kind of demonstrates in this case this happened, I'm not going to feel comfortable discussing what I see on that video if I'm there with the judge and the state's attorney and the different parties. You don't discuss it at all until you're back in the jury room. But that's one of the problems that I see here though. This specific video is grainy, hard to discern, very difficult to tell what's taking place on that video. If I am a juror, I would want to have the same benefit that I had when I was in my office viewing this video. Being able to rewind it, play it again, call other people in, other members of the jury, if I was a juror, to ask them, okay, what do you see happening here? So that we can discuss it and come to a decision about what is on the video. Is there any indication in the record that the jury ever asked to see the video a third time or ever made any complaint about we didn't see it enough or we want to look at something else? Is there any indication of that? There is not. There, however, also is no indication that they knew they could do that, see it a second time or a third time. And they were never told that they could not. Correct. And of course this request was granted. Correct. But we also have the Jury Secrecy Act that essentially says when a jury is deliberating, no party shall be present during those deliberations. Showing the video in open court is not deliberating. I don't see anything in this record that... What's the difference between a video and a witness on the stand? The difference is when the witness is on the stand, it's still the evidentiary portion of trial. It's not the portion of trial where the jury is deliberating to determine whether or not the state met their burden of proof in a case. But we also have this Jury Secrecy Act that says that if a jury is deliberating, no other person can be present. And the state makes an argument that the deliberations were suspended at some point when the jury came back in the courtroom. I see no evidence of that. Aren't they suspended when you take them to lunch? Well, they're suspended when they go to lunch, but generally in the record... Well, I will say I don't know if legally they're suspended or not. What I normally see... Because they're told. Yeah, I mean, you're going to go on, you know, I'll remind you, as I've indicated to you before, you can't discuss it with anybody. But you are going to be sitting down eating with one another, and there's going to be a bailiff or two bailiffs or three bailiffs with you. President, sure. I think I've suspended... When I did that, I thought I was suspending deliberations because I'm telling them, you can't deliberate. And I guess one of the operative points, though, in this case is that the jury was never told that here. Let's look at what happened. Is there any indication that the jury attempted to deliberate in the open courtroom while watching the video? There is not. But I would argue that could very well be because the parties were present as well, and they didn't feel free discussing the defendant's fate sitting there mere feet from him. Well, this kind of reminds me of an exhibit that's introduced at evidence. There's a dispute about how the weapon was used or how the exhibit came into play, and the jury says, send it back to us. So they're going to, what, experiment with nunchucks or see if they can twirl a six-shooter? I mean, it becomes interactive. Correct. Whereas the evidence is supposed to be presented to them for them to absorb in the courtroom. Right. And when you're doing this, you're simply giving them another opportunity to view the evidence. Almost, would it be permissible, I've never heard of this happening, to recall a witness after deliberations had started? Probably not. That may not be a good example. But it seems to me that this is a piece of evidence that the court may have discretion over whether to let it be viewed in the jury room versus the courtroom. So I'm questioning how it can be error to view it with a judge and attorneys present, and you're hoping that, you know, you're instructing the lawyers and the judge aren't going to be gasping or using body language to indicate what they think about what's happening on the screen. Right. I think you touched on something that's fairly important that I haven't even mentioned yet, which is this almost gets us into the structural errors or the territory. Because after the initial brief was filed, we had the Weaver versus Massachusetts come out. And Weaver said the structural error really lends itself to three different situations. Two of which are applicable here. And that is where the error is structural, where the right-hand issue is not designed to protect the defendant from erroneous conviction, but instead protects some other interests. Here I would argue that the other interest being protected is the jury's right to consider this evidence privately, away from the prying eyes of defense counsel, away from the size of the state's attorney. So Weaver pointed out that this is the sort of case where there could be structural error. Additionally, it lends itself to structural error because, according to Weaver, this is a case where the effects of the error are simply too hard to measure. You know, we're not going to have a juror, or there's not going to be any evidence in this record that we can point to and say, juror number eight would have acquitted him if they had been able to see the video again. And so we have to look at, is this a type of error that's very hard to measure? And it is. It's the type of error that, you know, we can argue theoretically about, but it's hard to really point to and say this is an example in this specific case, in this record, where it was error. What about the fact that defense counsel acquiesced, agreed to this procedure? So defense counsel said, we have no problem and we have no preference as to how that display is done. That's definitely not an objection. It's not an objection. The word objection is not there, and the tenor of what he said may very well not be an objection. But he also didn't say, we agree that that's the proper way of presenting this evidence. The cases that the states, or the case that the principle case that the state cites as to the acquiescence argument, is one where defense counsel submitted a jury instruction, the defendant was convicted. Then on appeal, the defendant argued that it was plain error for that instruction to have been given. And the court said, no, you acquiesced in that because you submitted the jury instruction. Here, counsel isn't objecting to it, but he's also not saying, I completely agree that that's the proper way that it's to be demonstrated. But when we look at the fact that the whole point is to allow the court to correct or address an issue before we have to look at it for the first time on appeal, wouldn't you agree that with defense counsel saying, we don't have any preference, that's fine if you want to do it that way, that completely deprives the trial court of any notice and any opportunity to address the issue? I agree with that. But I think that that's where the waiver principles come in. And if it is waiver, the plain error doctrine can be examined, rather than just saying that there's nothing that can be done with it at this stage.  That counsel didn't, you know, an attorney that's presumed to know the law didn't note to the court when this was being discussed that showing the video in this manner would violate a criminal statute, would allow someone else to be present while deliberations were ongoing. That was something defense counsel should have pointed out, especially in a case like this where you have, I think at the very least, a closely balanced case. You have police officers and a bouncer saying one thing. You have the defendant and two independent witnesses saying another thing. And then you've got a video that is kind of the linchpin of the whole thing. The video kind of tells the truth. It acts as your theoretical silent witness on what actually transpired here. And the jury simply wasn't allowed to fully consider any of that. Before my time expires, I do also want to point out, Leon has argued that impermissible hearsay was admitted as well. Specifically, the bouncer told the jury that he had been told by bartenders that Leon was being unruly, and two police officers told the jury that there had been some sort of altercation earlier, and that's why the defendant was asked to leave. Not only does this evidence, and especially the evidence from the police officers, equate to hearsay testimony, but none of this was limited for the jury's consideration. So was it offered for the truth of the matter asserted? It's possible. Is it okay if I answer that? Yes, please respond. Thank you. It is possible that it was as to Derek's, or pardon me, as to the truth of, no. Because as to Derek's testimony, it may have been because Derek testified that that was why he asked the defendant to leave. But as to the two other officers, no, it wasn't for the truth of the matter asserted there. All right. Thank you, counsel. You'll have more time on rebuttal if you desire. Thank you. Ms. Brooks. Thank you, Your Honors. May it please the Court, I'm Allison Paige Brooks. I'm appearing on behalf of the people. With respect to sufficiency of the evidence, the defendant takes an overly narrow view of the statute, the section 31-1A, which requires the person to knowingly resist or obstruct the performance of an authorized act of the peace officer within his or her official capacity. The performance of the authorized act was placing the defendant in handcuffs, that is, his arrest. That's pretty broad because it involves the, what the defendant did was he pulled his arms away from the assisting officers, Scott Wold and Caleb Zimmerman, which had the direct result of frustrating and inhibiting and resisting the ability of Officer Ryan Gross to effectuate that arrest by applying the handcuffs. So there's no explicit requirement in the statute that the defendant have some sort of direct contact with the person who he is resisting. It requires a physical act of resistance, but it doesn't necessarily have to be directly to the person who is performing the arrest. He's pulling his arms away from the control holds of the assisting officers, but that has the result of frustrating and inhibiting the ability of Officer Ryan Gross to effectuate that arrest by applying the handcuffs. And also because these officers are acting in concert, he's actually resisting all of them. And under the Wicks case in 2005, he could have gotten three convictions for resisting each and every one of those three officers who were acting in concert to arrest him. So therefore, the fact that he was only charged with one of them is not a reason to reverse that conviction on the sufficiency of evidence grounds. So the defendant claims that there was only one minute of resistance and he allowed himself to be taken into custody, but the testimony was that one of the officers placed a thumb behind the ear, which was a known pressure point, and that was instrumental in securing the defendant's compliance with the handcuffing. And so when you have three officers and one suspect and a maneuver such as this pressure point hold has to be applied in order to overcome the defendant's resistance, the fact that the officers were able to secure him into custody and complete their handcuffing within that minute of physical resistance does not mean that his struggle was momentary or insignificant and should be disregarded. Instead, reversing the conviction would then give the other people the incentive to physically resist an attempt to overcome the efforts of police officers, knowing that if they were unsuccessful in that first minute, that they would somehow be exonerated for that momentary attempt to avoid being taken into custody. So this court should be aware of not giving defendants, suspects, other people adverse incentives to try to do things like resisting police officers with the assurance that somehow they would be found not guilty if their resistance was overcome relatively quickly. So there was actual active resistance here. There is an altercation. It is apparent on the video. The defendant is not peaceably submitting. The video does not contradict the testimony of the police officers regarding the defendant's physical acts of resistance in respect to the jury deliberation issue. This is a case of acquiescence, which makes plain error review unavailable. The defendant asserts that because there was no objection, there was also no agreement, this doesn't constitute invited error. However, it doesn't require an actual positive agreement, such as we agree to this procedure, but simply saying that we don't care how this is done is acquiescence. This is more than simple absence of objection. The forfeiture rule would apply if there was an absence of objection, but when you go past that and it gets into the territory of acquiescence, that's when invited error takes over. And here the defense has not established that the defense counsel would be ineffective for failing to insist on unlimited private viewing of this recording in the jury deliberation room. Because this video does in some way contradict the testimony of defense witnesses, thereby making it potentially damaging evidence, and the risk would be that that would allow the jury to decide not to believe the defense's arguments in the defense's case and rely more heavily on the video if it had more of an opportunity to see it. So therefore, this court cannot find on this record, should not find that the defendant has overcome the strong presumption of trial strategy in terms of how it was handled. So when the prosecutor suggests simply playing it in court, and the defense says that's okay, it seems like that should be something that is a matter of trial strategy or trial tactics, and that should be deferred to. There's also no clear obvious error under the plain error rule. Even if plain error review did apply, it has to be clear obvious error. There's no clear obvious error from the record because it doesn't show that jury deliberations actually occurred during the evidence review. The defendant also does not establish that it is clear obvious under Illinois law that a trial court has no power to suspend jury deliberations for the purposes of evidence review. The defendant uses these examples of, well, if they're providing a supplemental instruction, such as a print instruction, then they can suspend, the judge can suspend deliberations, but not for this purpose. That is not something that is clear obvious as being established under Illinois law. In fact, if this court would agree with the defendant, it would be engaging in rulemaking that would require trial courts to provide evidence, including other sorts of physical evidence exhibits, for the purposes of evidence review. For unrestricted jury use during deliberations in secret, and that's something that should not necessarily occur, and it should be up to the Supreme Court of Illinois to establish rules on how that should be handled. With respect to the structural error argument, the defendant says that this is protecting the right of the jury. Well, it's not clear that the jury has a right to engage privately and deliberate with any sort of exhibit that was admitted into evidence. In fact, courts have discretion in terms of what goes back to the jury for their review. So therefore, this is not protecting any jury right because it's not clear the jury has that right to insist on having or to receive all the evidence for private deliberation. And so with respect to the hearsay arguments, again, I think he got 30 days in jail, so this is not a situation where he appears to have the Post-Conviction Review Act, Hearing Act, as an opportunity for, if this court were to defer consideration, for example, of his claims of ineffective assistance of counsel. And if he doesn't have the Post-Conviction Hearing Act, then really what he's left with is the fact that he's failed to do a trial strategy. Failing to object to these sort of things is trial strategy. An experienced attorney knows when not to object and doesn't want to necessarily highlight the damaging evidence in case an objection is overruled. So therefore, the defendant has to overcome that strong presumption trial strategy. And if he's failed to do that on the record, then the only option for this court would be to affirm, based on the defendant's testimony, whether to meet his high standard of strickland. He also cannot meet the high standard of strickland with respect to prejudice because the mention of an earlier altercation was not prejudicial because it was only cumulative. You have a video showing the defendant being competitive and agitated. We have also the testimony of police officers observing the altercation with the bouncer, Derek Claflin, where the defendant was saying the same attitude or same behavior is not going to create a reasonable doubt as to his guilt or a reasonable probability that he might have been acquitted. So for those reasons, the state would request this court to affirm the conviction. I would entertain any questions you have. Well, counsel, what about the hearsay statements? What's your argument regarding that? Even if hearsay is improperly admitted, if it's admitted without objection, then the defendant has to establish plain error. But in order to constitute plain error, it has to be reversible error. And to be reversible error, it has to be prejudicial and it may not be harmless. And the state's argument is that any error would be not prejudicial and would, in fact, be harmless because it would only constitute something that's cumulative to what's already before the charge of fact. That is, the defendant was agitated and combative during this later altercation with the bouncer. And that would not, the fact that he might have had some other unrelated sort of like vaguely specified altercation before the video showed what happened with Claflin and the police officers, that would not prejudice the jury into thinking that somehow he is the type of person who would resist the police officers, which I think is the defendant's argument for why he's prejudiced. The state believes that's sufficiently prejudicial because the defendant was agitated and combative with the police officers, the police officers testified about that properly. And any hearsay reference about an earlier altercation was not consequential. Would Claflin be able to use that same exception as far as to show why he did what he did, the bouncer? Yes. He could say, he could explain, he could use that for limited purpose. I don't believe there was an instruction asked for or given with respect to a limited purpose for which evidence was received. So the defendant may have a complaint about that, but said it's not something in which he could get a new trial. So thank you, Your Honors. Counsel for the state is correct. It's further evidence of counsel's ineffectiveness in this case for first not objecting to this evidence, especially the evidence from the police officers who had this hearsay testimony come in, but also for not limiting this evidence in a case where the defendant is accused of resisting arrest. I disagree with the state when the state says that this evidence was merely cumulative. If a juror sees that a defendant is in a possibly verbal altercation, or verbal confrontation with somebody in a video, that is very different than saying that he was in a physical altercation prior to when the police get there. If I hear that somebody is involved in a physical altercation, it makes it a little more likely to me that, well, if they were in an altercation ten minutes prior to this, maybe they are resisting. Maybe they are trying to fight with the police officers because they have that almost propensity to do that. This wasn't limited, and counsel didn't object to this testimony, which, again, further demonstrates the ineffectiveness of counsel. As to the reasonable doubt argument, the state said, and I'm not saying that this is word for word, but that Leon resisted Gross's ability to effectuate the arrest. My problem with that statement is there's no evidence of this. This would be a much different case if the state were questioning Gross, and Gross said he pulled away from the other officers, and the state said, okay, Officer Gross, what were you doing at the time? Well, I had my handcuffs out, and I was ready to handcuff him at that moment, but when he pulled away from the other officers, I couldn't do that. Well, I think that gets us a lot closer to a situation of resisting arrest. An act of the defendant is making an officer's authorized act impossible to perform, but we don't have that here. We don't have any testimony from Gross saying that I was inhibited by an act of the defendant from doing an authorized act, from putting the handcuffs on him, from arresting him. We may have had that as to the other officers, but we don't have that towards Officer Gross. The state also, as to the video portion of the argument, says that the video contradicted some of the defense witnesses, and therefore it may have been trial strategy for defense counsel not to see that the video was properly shown to the jury. If it is the same reference that the state has made in its brief, there's some dispute on whether or not the video shows the defendant's chin hitting the bar, or maybe something else, maybe a bottle or a glass on the bar. That in and of itself is not sufficient to say, well, then I'm not going to show the video to the jury that may substantiate my witness's testimony that the defendant wasn't resisting at the time. And again, when I view the video, I don't see any active resistance on the part of the defendant. I don't see him fighting with the officers. I don't see him refusing to put his hands behind his back. So that video would have actually helped rather than hindered the defense. Finally, the state, I believe, said that the deliberations didn't occur in the courtroom. And that's correct in this case, possibly because the jury didn't want to talk about what it saw in the video in front of the parties. Again, the jury should have had an opportunity to view this video in the privacy of the deliberation room, as the courts have said for decades. And I should add, and I think it's a very important point, as to whether this was error or not, the third district in McKinley, two of the three justices found it was error for the video to be played in the courtroom. Now, two of those justices found that it wasn't prejudicial to the defendant, but we have different facts here, and in McKinley, again, two of the justices did find it was error. So I'd ask this court to find the same thing. For those reasons, we ask that Leon's conviction be reversed, or that he be granted the release we've asked in the briefs. Thank you, counsel. We'll take the matter under advisement and be in recess.